# RUSH vs. JOHNSTON.

## Third Judicial District Court, July 1857.

### VOIDABLE SALE.

Where all the stockholders are not present at a sale of the corporation property, when such sale is for the advantage and benefit of the absent stockholders, they are presumed to have knowledge of it, after a sufficient lapse of time.

A delay of three years, in inquiring into the validity of such sale, will be construed into an implied acquiescence therein.

Where the absent stockholders stand by and see another, who has purchased without fraud or collusion, the corporation property, improve the same for a long time without making known their adverse claim, they will not be permitted to assert it.

The main object of this suit is to obtain a decree that the defendants account, for the benefit of the plaintiffs.

In Sept., 1852, the Santa Clara Steam Mill Company was organized, the stock of which consisted of 300 shares at $100 per share. The plaintiffs, the defendants, (except the corporation,) and others, were shareholders. Their mill was erected for the manufacture of flour, and was in operation by the first of Jan., 1853, and, with some exceptions. continued running till the 9th of April thereafter, when it was ascertained that only $16,000 had been paid on the shares, that the income of the mill was $9,000, that the expenses were $33,000,—leaving a balance against the Company of $8,000; and that the stockholders were not only unwilling to contribute to relieve the company from its indebtedness, but were opposed to incurring the necessary expenses of repairing the mill. One of the creditors had recovered a judgment against the corporation for upwards of $300, in a Justice's Court, and had levied an execution upon the mill and the lot upon which it was erected. The stockholders held various public meetings at which many of them attended, including some of the plaintiffs. Johnston (one of the defendants,) proposed that he and as many as would join with him would purchase said mill and lot, at the sale upon said execution, and pay the debts of said company, provided they should have the corporation property. The stockholders who attended said meetings, consented to the proposition. The facts proved, show that the shareholders were to be discharged from further payment on their shares. The

defendants accordingly made the purchase on said 9th day of April, at the officer's sale, paid the debts, and afterwards expended about $20,000 in improving said mill. Those of the plaintiffs who were not present at said arrangement, were cognizant thereof, and of the making of said improvement without making any objection or asserting claim to the mill, or their stock. The corporation owned no other property. As soon as said improvement was made, the mill commenced running and has since done a fair business. The plaintiffs were silent as to their claim until sometime in 1856, after the Supreme Court had decided that a Justice of the Peace had no jurisdiction beyond $200.

The plaintiffs contend that, as the Justice had no jurisdiction of the suit, the judgment, execution and sale were void, and did not pass the title to the defendants ; that the same remained in the corporation, of which they (the plaintiffs,) were stockholders ; that the defendants should account to the corporation, and that the plaintiffs should have their proportion of the profits accruing after said sale.

The main question presented is : Have the plaintiffs established sufficient equity to induce a court of chancery to decree an account ? From the proof, no fraud can be charged upon the defendants—the transaction was public, open and fair, and seemed to be the only practical mode of relief to the corporation from its embarrassments. Since said sale there has been no corporate action.

*Pratt,* and *Redman,* and *Younger,* for plaintiff.

*Wallace,* and *Voories & Archer,* for defendants.

HESTER, J.—Held that although the plaintiffs were not present at the time of the acceptance of Johnston's proposition, and the sale of the property, yet they are presumed to have knowledge thereof, and of the payment of the debt, and of the improvement of the mill, as they had ample opportunity of acquiring such knowledge : the law being, that a person is presumed to know what by reasonable diligence he could have ascertained. 7 Blackford, 329.

It was also held, that proof of a mere legal right is insufficient to maintain this action, which is based upon certain equities alleged in the complaint. The two are separable. They may or may not unite in the same person. To induce the action of a chancellor, the equitable

right must be established. For upwards of three years, the plaintiffs treated their stock and the mill as abandoned, and yielded up to the defendants; and the corporation as having no existence—acquiescing in their claim. Such a course of action of the plaintiffs, would be a fraud upon the defendants if they were permitted, after a lapse of so much time and the expenditure of money in refitting the mill and the payment of the corporation debts, to assert their claim in a court of Chancery. To say the least of it, it destroys their equity for a recovery.

The law is well settled, that where a man suffers another to expend money upon land under an erroneous opinion of title, without making known his claim, he shall not afterwards be permitted to assert it. It is a kind of equitable estoppel. 12 Mo. R., 339; 4 John. Ch. R., 91.

A fulfilment of the contract on the part of the defendants, creates an equity in their favor which should control the conscience of a Chancellor. Such a contract, uncontaminated with fraud, and a submission thereto by the party realizing its benefits, ought not to be disturbed in a court of equity; but the parties should be left to whatever remedy they may have in a court of law.

An account therefore, should not be decreed, and the bill should be dismissed.